UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC, | Case No.  3:22-cv-296-CWR-FKB |
| Plaintiff, | Hon. Carlton W. Reeves, District Judge |
| v. | Hon. F. Keith Ball, Magistrate Judge |
| GARY PROPERTY MANAGEMENT, LLC, | |
| Defendant. | |

**COMPLAINT FOR DAMAGES
AND DECLARATORY RELIEF**

Alysson Mills, in her capacity as the court-appointed receiver for Arthur Lamar Adams

and Madison Timber Properties, LLC (the "Receiver"), files this Complaint for Damages and

Declaratory Relief against Gary Property Management, LLC ("Gary Property Management" or

Defendant"), and represents as follows:

**INTRODUCTION**

1.    Oxford Springs, LLC was a Delaware LLC formed in 2014 by Lamar Adams,

Patrick Sands, and Michael Billings. Its sole asset was approximately 2,400 acres of undeveloped

land in Lafayette County, Mississippi.

2.    The Receiver sold approximately 2,278 of the 2,400 acres ("Parcel 1") on

December 28, 2020. The Receiver thereafter caused Oxford Springs to be dissolved, and as a result,

Oxford Springs's remaining assets—its cash and title to the remaining 100 acres of land—were

transferred to the Receivership Estate.

3.    By order dated April 28, 2021, the Court authorized and directed the Receiver to sell the remaining 100 acres ("Parcel 2" or the "Property") pursuant to a buy-sell agreement attached to the Receiver's motion requesting authority to sell (the "April 28 Order").[1] A copy of the April 28 Order is attached hereto and made a part hereof as Exhibit 1.

4.    The April 28 Order specified that Parcel 2 would be sold free and clear of any and all liens, encumbrances, and adverse claims whatsoever including, without limitation, any encumbrance or adverse claim asserted by Gary Property Management. The April 28 Order further provided that to the extent Gary Property Management held any valid lien(s) encumbering title to Parcel 2, the liens would attach to the sale proceeds. In this regard, the April 28 Order specified:

> Gary Property Management, LLC timely provided written notice of its claim that obligations that it asserts were formerly owed to it by Oxford Springs, LLC, and are now owed to it by the Receiver, are secured by an encumbrance on Parcel 2. Said encumbrance, if it exists, shall automatically attach to the sale proceeds of Parcel 2, and the Receiver shall hold said proceeds separate and apart from other assets of the Receivership Estate. The Receiver is directed to file appropriate pleadings to initiate proceedings to determine (1) whether Gary Property Management, LLC has a valid and enforceable claim of any type against the Receivership Estate; (2) if Gary Property Management, LLC has such a claim, the amount of such claim; and (3) whether all or any part of such claim is secured by the proceeds of the Receiver's sale of Parcel 2.

5.    As directed by the April 28 Order, the Receiver now files this Complaint and requests entry of a declaratory judgment to the effect that Gary Property Management does not hold a valid and enforceable claim in any amount against the Receivership Estate. Alternatively, and only should the Court find that Gary Property Management holds a claim against the Receivership Estate in some amount, the Receiver respectfully requests the Court enter a

---

[1] Doc. 268, *Securities & Exchange Commission v. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

declaratory judgment holding that the claim of Gary Property Management is unsecured and does not in any way encumber the cash proceeds from the sale of Parcel 2.

6. The Receiver further requests that the Court enter a judgment finding that Gary Property Management's sale of Parcel 2 to Oxford Springs was a fraudulent conveyance within the meaning of the Mississippi Uniform Fraudulent Transfer Act, Miss. Code Ann. § 15-3-101, *et seq*., and that the Receiver is entitled to (i) an award of damages against Gary Property Management in an amount to be proven at trial, but at least equal to the difference between the value given by Oxford Springs to Gary Property Management for Parcel 2 and the fair market value of the Property as of the date of conveyance; and (ii) setoff of such damages against the amount of the claim, if any, the Court finds Gary Property Management holds against the Receivership Estate. Finally, the Receiver requests a finding that Gary Property Management has been unjustly enriched by the consideration it received for Parcel 2 in excess of its fair market value and that she be granted an appropriate award of damages.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action and its parties, and venue is proper in this Court, pursuant to the Securities Act of 1933, 15 U.S.C. § 77v(a); the Securities & Exchange Act of 1934, 15 U.S.C. § 78aa; 28 U.S.C. § 1692; and 28 U.S.C. § 754.

8. This action arises in connection with and is ancillary to the civil action already pending in this Court styled *Securities & Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*, No. 3:18-cv-252-CWR-FKB. In that civil action, the Securities & Exchange Commission ("S.E.C.") alleges that "[b]eginning in approximately 2004," Adams,

through Madison Timber, "committed securities fraud by operating a Ponzi scheme" in violation

of the Securities Act of 1933 and the Securities & Exchange Act of 1934.[2]

9.      The S.E.C. requested that the Court appoint a receiver for the estates of Adams and

Madison Timber.[3] As the Court that appointed the Receiver, this Court has jurisdiction over any

claim brought by the Receiver in the execution of her duties. "[I]t is well-settled that when an initial

suit results in the appointment of the receiver, any suit that the receiver thereafter brings in the

appointment court in order to execute h[er] duties is ancillary to the main suit." *U.S. Small Bus.

Admin. v. Integrated Envtl. Sols., Inc.*, No. 05-cv-3041, 2006 WL 2336446, at *2 (S.D. Tex. Aug.

10, 2006) (citing *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981)). *See also* 28

U.S.C. § 1692 ("In proceedings in a district court where a receiver is appointed for property, real,

personal, or mixed, situated in different districts, process may issue and be executed in any such

district as if the property lay wholly within one district . . . ").

10.     Consistent with that precedent, Chief U.S. District Judge Daniel P. Jordan III has

ordered that all "cases filed by the duly appointed Receiver . . . which . . . arise out of or relate to

[*Securities & Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*,

No. 3:18-cv-252-CWR-FKB] shall be directly assigned by the Clerk of Court to U.S. District Judge

Carlton W. Reeves and U.S. Magistrate Judge F. Keith Ball."[4] In compliance with Chief Judge

Jordan's order, the Receiver shall separately file, contemporaneously with this complaint, a notice

of relatedness.

---

[2] Doc. 3, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.).

[3] Docs. 11, 21, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.).

[4] Doc. 45, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.).

## PARTIES

11.    Plaintiff Alysson Mills is the Court-appointed Receiver for the estates of Adams and Madison Timber. She stands in Madison Timber's shoes for the express purpose of maximizing assets available to Madison Timber's victims. The Court's order of appointment vests in the Receiver the power to, among other things:

> investigate and . . . bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver.[5]

12.    Defendant Gary Property Management, LLC is a Mississippi limited liability company doing business in Mississippi.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

*Oxford Springs, LLC*

13.    Oxford Springs was a Delaware limited liability company formed in 2014. The only members were Lamar Adams, Patrick Sands, and Michael Billings. Lamar Adams served as the managing member of Oxford Springs. Oxford Springs's sole asset consisted of approximately 2,400 acres of undeveloped land in Lafayette County, Mississippi, which Oxford Springs purchased with the intent to develop an upscale neighborhood with an equestrian park and golf course near Oxford, Mississippi. The property was never developed.

14.    Adams's principal business activity throughout his tenure as the managing member of Oxford Springs was promoting investments in Madison Timber Properties, LLC and overseeing its "business operations." In fact, Madison Timber's only business was operating a Ponzi scheme

---

[5] Doc. 33, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.). By order dated August 22, 2018, the Court eliminated the requirement that the Receiver obtain "prior approval of this Court upon ex parte request" before bringing any legal action. Doc. 38, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.).

that ultimately generated approximately $100,000,000 in losses that the Receivership Estate now owes to investors.

15.    All the cash that Adams invested in Oxford Springs was derived from funds deposited into the Madison Timber Ponzi scheme by defrauded investors. Upon information and belief, Adams's cash contributions to Oxford Springs amounted to approximately $1,380,000.

16.    Michael Billings was a "recruiter" of investors to the Madison Timber Ponzi scheme, and he received his membership interest in Oxford Springs as a reward for his successful efforts as a recruiter. Billings did not make a cash contribution to Oxford Springs.

17.    Together, Adams and Billings held a majority interest in Oxford Springs. Given their majority ownership and that the sole source of funds they provided to Oxford Springs came from Madison Timber, Oxford Springs should be considered an affiliate of Madison Timber.

*Oxford Springs's purchase of Parcel 1*

18.    Oxford Springs purchased approximately 2,278 acres of undeveloped land ( "Parcel 1") in 2015 for $5,158,031.54, or about $2,264 per acre.

19.    The acquisition of Parcel 1 was financed by cash contributions made by Adams and Sands and a loan from First National Bank of Clarkdale ("FNBC") in the amount of $4,224,812. The FNBC loan was secured by a deed of trust encumbering Parcel 1.

*Oxford Springs's purchase of Parcel 2*

20.    The closing of Oxford Springs's acquisition of Parcel 1 occurred on or about May 11, 2015. Some months later, a representative of Oxford Springs approached representatives of Gary Property Management about buying Parcel 2, a separate tract of 100 acres of undeveloped property adjacent to Parcel 1.

21.    On April 27, 2016, Gary Property Management and Oxford Springs executed a Real Estate Purchase Agreement for the purchase of Parcel 2. A copy of the Real Estate Purchase Agreement is attached hereto and made a part hereof as Exhibit 2.

22.    Provisions of the Real Estate Purchase Agreement of particular relevance here are the following:

> (i) Oxford Springs agreed to pay to Gary Property Management $1,000,000 cash, or about $10,000 per acre, for Parcel 2;
>
> (ii) Oxford Springs agreed "as additional consideration" to make significant infrastructure improvements to Parcel 2;
>
> (iii) Oxford Springs agreed to restrictions on the development of Parcel 2; and
>
> (iv) Gary Property Management was granted a right of first refusal with respect to the future sale of all or part of Parcel 2.

23.    With regard to the "additional consideration," the Real Estate Purchase Agreement specifies that Oxford Springs, at its sole cost and expense, shall construct "[a] boulevard extending across the Gary Property [defined as Parcel 2] from Highway 7 to County Road 204 with an access and utility easement off of said Boulevard to be reserved to the Retained Gary Property. . . . The Boulevard will meet or exceed Lafayette County, Mississippi and any applicable Road specifications for roadways acceptable for dedication to the County." The Real Estate Purchase Agreement further provided that "[t]he right of way for the Boulevard shall contain utility tie-ins and hookups that will service future expansion to [Oxford Springs's] development as well as the utility easement at the access easement to the Retained Gary Property."

24.    The "Retained Gary Property" is a parcel of real estate owned by Gary Property Management that lies to the south of Parcel 2.

25.     In addition to constructing this elaborate boulevard, Oxford Springs agreed that it would provide fencing and landscaping running the length of the border between Parcel 2 and the Retained Gary Property.

26.     The Real Estate Purchase Agreement also placed restrictions on what Oxford Springs could build on Parcel 2. Specifically, Oxford Springs agreed there would be "no residential or commercial development" on Parcel 2 "until such time as the Boulevard contemplated by Section 2.B. has been completed. Thereafter, any commercial development will be limited to those activities" designated in Exhibit B to the agreement.

27.     Finally, Oxford Springs granted to Gary Property Management a contingent right of first refusal, which significantly handicapped Oxford Springs should it ever decide to sell Parcel 2. Oxford Springs could sell all or any part of Parcel 2 only after Gary Property Management had a period of 90 days from the presentation of a sale agreement to exercise its option to purchase the property under the same terms and conditions.

28.     On September 23, 2016, Gary Property Management executed a general warranty deed conveying title to Parcel 2 to Oxford Springs ("Warranty Deed"). The Warranty Deed imposed the same obligations upon Oxford Springs as the Real Estate Purchase Agreement with respect to Oxford Springs's obligations to construct a boulevard and to provide landscaping and fencing. The Warranty Deed applied the same restrictions upon Oxford Springs's development of Parcel 2 and granted a right of first refusal to Gary Property Management. A copy of the Warranty Deed is attached hereto and made a part hereof as Exhibit 3.

29.     The entire $1,000,000 purchase price for Parcel 2 was financed by another loan from FNBC. Repayment of the loan was secured by a deed of trust encumbering title to Parcel 2.

30.    Oxford Springs did not develop or improve Parcel 2 following the sale, and Parcel 2 remained entirely undeveloped as of the date of entry of the April 28 Order.

31.    The per acre price for Parcel 2 was more than 400% percent greater than the per-acre price for Parcel 1.

32.    Upon information and belief, the cash purchase price that Oxford Springs paid per acre for Parcel 2 was substantially higher than the price paid for any comparable real estate. Of course, the true consideration that Oxford Springs gave to Gary Property Management for Parcel 2 was much greater than the $1,000,000 purchase price because of the substantial costs to Oxford Springs to construct the boulevard and to provide fencing and landscaping.

33.    A civil engineering firm employed by Adams proposed preliminary plans for construction of the boulevard, fencing, and landscaping. Based on these plans and the firm's work on similar projects, it estimated the cost to construct the boulevard, fencing, and landscaping to be far more than the $1,000,000 Oxford Springs paid to Gary Property Management for Parcel 2.

*The Receiver's sale of Parcel 1 and Parcel 2*

34.    The Receiver was appointed on June 22, 2018.

35.    Between August and October 2019, the Receiver entered into a series of settlements, all of which were approved by this Court, which resulted in the release of the debt owed to FNBC and the release of FNBC's deeds of trust encumbering Parcel 1 and Parcel 2. The settlements also resulted in Billings and Sands conveying to the Receiver their respective membership interests in Oxford Springs. As a result, the Receiver became the sole member of Oxford Springs, owning both Parcel 1 and Parcel 2 free of FNBC's deeds of trust.

36.    Commencing in the fourth quarter of 2019 and continuing into 2020, the Receiver marketed Parcel 1 and Parcel 2 on a nationwide basis. In the course of marketing the properties,

9

the Receiver determined that the various obligations contained in Warranty Deed were so onerous that there was no reasonable prospect for sale of Parcel 2 absent a court order allowing for the sale of Parcel 2 free and clear of liens and encumbrances. Accordingly, the Receiver withdrew Parcel 2 from the market and continued marketing Parcel 1.

37.     Ultimately, the Receiver received and accepted an offer to sell Parcel 1 for $5 million. The transaction closed on December 28, 2020. After payment of brokerage fees and overdue property taxes, Oxford Springs received $4,668,530.48 in proceeds from the sale.

38.     Following the sale of Parcel 1, the Receiver caused Oxford Springs to be dissolved. As a result, Oxford Springs's remaining assets, principally Parcel 2 and cash from the sale of Parcel 1, were transferred to the Receivership Estate.

39.     Following the sale of Parcel 1 and dissolution of Oxford Springs, the Receiver again marketed Parcel 2 on a nationwide basis. Ultimately, on March 20, 2021, she entered into a buy-sell agreement which provided, *inter alia*, that for and in consideration of a purchase price of $540,000, the Receiver would convey title to Parcel 2 to the buyer free and clear of any liens, encumbrances, obligations, or adverse claims.

40.     In order to sell Parcel 2, the Receiver was required to comply with the requirements of 28 U.S.C. § 2001(b). Accordingly, on March 12, 2021 and at the request of the Receiver, the Court entered an order adopting procedures permitting the Receiver to sell Parcel 2 consistent with the Court's prior orders and in compliance with 28 U.S.C. § 2001(b) ("Procedures Order").[6] Specifically, the Court instructed that it would hold a hearing on the proposed sale on April 12, 2021. In advance of that hearing, the Receiver was required to obtain three qualified appraisals of

---

[6] Doc. 255, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.).

Parcel 2, announce the proposed sale and the Court's hearing on the Receiver's website and in the *Clarion Ledger*, and consider any bona fide offers to purchase Parcel 2.

41.    Pursuant to and consistent with the Procedures Order, the Receiver obtained appraisals from three appraisers who are duly qualified and licensed in the State of Mississippi: Christopher Wilson, Charles Byrd, and Harold Campbell, Jr. Each has experience in appraising real property comparable to and in the vicinity of Parcel 2, and each was deemed appointed by the Court for the purposes of 28 U.S.C. § 2001(b).

42.    The average appraised value of Parcel 2 as determined by the three court-appointed appraisers was $561,667.

43.    The Receiver announced the proposed sale and the Court's hearing on her website within three days of the entry of the Procedures Order.

44.    The Receiver also announced the proposed sale and the Court's hearing in the *Clarion Ledger*, a newspaper of general circulation, sufficiently in advance to allow 10 days' notice of the hearing and the opportunity to submit competitive bids as required by 28 U.S.C. § 2001(b).

45.    Although the Receiver and her counsel repetitively invited bona fide offers of more than the proposed sale price specified in the buy-sell agreement, they did not receive any competitive offers.

46.    The Court held a hearing on the proposed sale of Parcel 2 on April 12, 2021. No competitive offers for Parcel 2 were presented at that time. Notably, the only objection was filed by Gary Property Management, which asserted that Parcel 2 could not be sold free and clear of the obligations imposed on Oxford Springs by the Warranty Deed. Neither Gary Property

Management nor any other interested party asserted that the appraisals were erroneous or that the

Receiver was receiving an unreasonably small price for Parcel 2.

47.    On April 28, 2021, the Court approved the sale of Parcel 2 "free and clear of liens,

encumbrances, and related obligations or claims," specifically ordering the following:

> The Court authorizes and directs the Receiver to sell Parcel 2 to the Buyer
> free and clear of certain obligations purportedly imposed by the Warranty
> Deed dated September 23, 2016 that transferred title of Parcel 2 from Gary
> Property Management, LLC to Oxford Springs [Receiver's Exhibit 4],
> including in particular any adverse claims or obligations: (i) set forth in
> Section 7(a) pertaining to the construction of a roadway or boulevard, utility
> tie-ins and hookups, and the granting of an utility easement; (ii) set forth in
> Section 7(b) pertaining to the construction of fencing, installation and
> maintenance and landscaping, and the preparation and approval of a
> landscaping plan; (iii) set forth in Section 7(c) pertaining to the deadline for
> completion of the improvements set forth in Section 7(a) and 7(b); (iv) the
> limitations on development in Section 8 that condition development on at
> least partial completion of the roadway across Parcel 2; and (v) set forth in
> Section 9 pertaining to the right of first refusal granting in form of Gary
> Property Management, LLC.[7]

## COUNT ONE

### For a Declaratory Judgment that Gary Property Management, LLC
### Has No Claim Against the Receivership Estate

48.    The Receiver re-alleges each of the foregoing paragraphs as though fully stated

herein.

49.    At the time that Gary Property Management conveyed Parcel 2 to Oxford Springs,

Parcel 2 had a fair market value in the range of $450,000 to $575,000. Nonetheless, Oxford Springs

paid $1 million in cash for Parcel 2 and undertook obligations that imposed additional costs on it.

The cost to construct those improvements has been estimated to be more than $2,500,000. The

Warranty Deed further reduced the value of Parcel 2 by making the marketing of Parcel 2 difficult,

---

[7] Doc. 268, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-00252 (S.D. Miss.).

if not impossible, due to the restrictions on development and the right of first refusal granted to Gary Property Management.

50.     Performance of the obligations imposed by the Warranty Deed effectively became impossible upon the collapse of the Madison Timber Ponzi scheme and appointment of the Receiver.

51.     The only possible claim by Gary Property Management against the Receivership Estate arises from the failure to construct the boulevard, landscaping, and fencing.

52.     The amount of Gary Property Management's claim, if one exists, is not the cost to construct the boulevard and install the landscaping and fencing, but instead is any incremental increase in the value of Gary Property Management's land adjacent to Parcel 2 had those improvements been made.

53.     In evaluating and ruling upon claims against the Receivership Estate, this Court enjoys broad equitable powers. Given the gross disparity between the fair market value of Parcel 2 when Oxford Springs bought it from Gary Property Management and the actual value given to Gary Property Management for Parcel 2, the Court should declare that Gary Property Management holds no enforceable claim against the Receivership Estate.

54.     Alternatively, the Court should declare any such claim of Gary Property Management as subordinate to claims of Madison Timber's victims.

## COUNT TWO

### Alternatively, for a Declaratory Judgment
### that any Claim of Gary Property Management, LLC Against the Receivership Estate
### Is Unsecured and Does Not Encumber Proceeds from the Sale of Parcel 2

55.     The Receiver re-alleges each of the foregoing paragraphs as though fully stated herein.

56.     If the Court finds that Gary Property Management holds a valid and enforceable claim against the Receivership Estate, that claim should be classified as an unsecured claim that in no way encumbers the proceeds from the Receiver's sale of Parcel 2.

57.     The obligations imposed by the Warranty Deed with regard to construction of the boulevard and installation of fencing and landscaping are personal obligations that do not encumber title to Parcel 2.

58.     In the alterative, and only should the Court find that the obligations in the Warranty Deed encumber title to Parcel 2, the Court should nonetheless find that the obligations are unsecured because (i) performance of the obligations became financially impossible by no later than the collapse of the Madison Timber Ponzi scheme and appointment of the Receiver; and (ii) the costs of the improvements is grossly disproportionate to the value of any benefits arising from constructing the boulevard and installing landscaping and fencing. Enforcement of the lien violates applicable public policy and would violate equitable principles.

59.     Any encumbrance held by Gary Property Management has been released due to the radically changed circumstances related to Parcel 2 between the execution and recording of the Warranty Deed and entry of the April 28 Order.

60.     The Receiver is entitled to a declaratory judgment to the effect that the claim, if any, of Gary Property Management against the Receivership Estate is unsecured and does not encumber the proceeds from the sale of Parcel 2.

14

## COUNT THREE

### For Violations of Mississippi's Fraudulent Transfer Act

61.    The Receiver re-alleges each of the foregoing paragraphs as though fully stated herein.

62.    The Receiver may avoid any transfer made in violation of the Mississippi Uniform Fraudulent Transfer Act (the "Act"), Miss. Code Ann. § 15-3-101, *et seq.*

63.    Among the transfers that may be avoided are those made at a time when the debtor is insolvent or that result in the debtor's insolvency and for which the debtor does not receive reasonably equivalent value. Such transfers may be avoided by persons who were creditors of the transferor before the occurrence of the transfer.

64.    Under the Act, a "debtor is insolvent if the sum of the debtor's debt is greater than all of the debtor's assets, at a fair valuation." Miss. Code Ann. § 15-3-103. Oxford Springs was insolvent immediately prior to its purchase of Parcel 2 from Gary Property Management because its liabilities exceeded its assets.

65.    Immediately before its purchase of Parcel 2, Oxford Springs's sole asset was Parcel 1. The fair market value of Parcel 1 was no greater than (and likely less than) $5,158,031, the amount that Oxford Springs paid for Parcel 1.

66.    The liabilities of Oxford Springs were significantly greater than $5,158,031. Oxford Springs was indebted to FNBC in the approximate amount of $4,224,812. In addition, because Oxford Springs was an affiliate of Madison Timber and over time received approximately $1,380,000 in funds from Madison Timber, Oxford Springs was exposed to the debts owed by Madison Timber to the many investors in the Ponzi scheme.

67.    At a minimum, at the time it purchased Parcel 2, Oxford Springs was liable for repayment of the money contributed to it by Lamar Adams and Madison Timber from funds generated by the Ponzi scheme.

68.    Persons who are currently creditors of Madison Timber were also its creditors prior to Oxford Springs's purchase of Parcel 2.

69.    Oxford Springs paid $1 million in cash for Parcel 2, and assumed a $1 million debt to pay the cash purchase price. Oxford Springs also assumed obligations—the construction of a boulevard, fencing, and landscaping—the performance of which would cost Oxford Springs in excess of $2.5 million. Upon information and belief, the true purchase price for Parcel 2 was in excess of $3.5 million.

70.    The fair market value of Parcel 2 as of the date of its conveyance to Oxford Springs was no greater than $540,000, or some $3 million less than the consideration Oxford Springs gave to Gary Property Management. Notably, given the burden of the right of first refusal in Gary Property Management's favor and the restrictions on the development of Parcel 2, Parcel 2's fair market value likely was substantially less than $540,000.

71.    Oxford Springs did not receive reasonably equivalent value for the total consideration it gave to Gary Property Management.

72.    If Oxford Springs was not insolvent prior to its purchase of Parcel 2, which is specifically denied by the Receiver, it was most definitely insolvent as a result of its purchase of Parcel 2 and its assumption of related obligations and liabilities.

73.    After due proceedings, the Receiver is entitled to a judgment against Gary Property Management for damages that will be proven at the trial of this case, but which are at least in an

amount representing the difference between the consideration Oxford Springs gave for Parcel 2 and the fair market value of Parcel 2 as of the date of the conveyance.

74.    Should the Court find that Gary Property Management has a valid and enforceable claim against the Receivership Estate, under the doctrines of recoupment and setoff, the Receiver is entitled to a credit against such claim up to the difference between the fair market value of Parcel 2 at the time it was conveyed by Gary Property Management to Oxford Springs and the amount of consideration given for Parcel 2 by Oxford Springs.

## COUNT FOUR

### Unjust Enrichment

75.    The Receiver re-alleges each of the foregoing paragraphs as though fully stated herein.

76.    In the alternative, Gary Property Management has been unjustly enriched at the expense of the Receivership Estate and Madison Timber's defrauded investors.

77.    Oxford Springs paid $1 million for Parcel 2 and assumed obligations that would cost Oxford Springs far more than the fair market value of Parcel 2 as of the date of its conveyance to Oxford Springs.

78.    The Receiver is entitled to the entry of a judgment against Gary Property Management holding that it has been unjustly enriched and is liable for an amount to be proven at trial, but at least an amount representing the difference between the consideration Oxford Springs gave for Parcel 2 and the fair market value of Parcel 2 as of the date of the conveyance.

WHEREFORE, the Receiver respectfully requests, that after due proceedings, the Court enter a judgment in favor of the Receiver and against Gary Property Management:

    i.   declaring that Gary Property Management does not hold a valid and enforceable claim against the Receivership Estate, or if it holds any such claim, that the claim is subordinate to the claims of all persons who were victims of the Madison Timber Ponzi scheme;

    ii.   in the alternative, declaring that the claim, if any, of Gary Property Management is wholly unsecured and does not encumber proceeds from the sale of Parcel 2;

    iii.   declaring that the sale of Parcel 2 to Oxford Springs is a constructive fraudulent conveyance;

    iv.   awarding damages to be proven at trial, but that should be in an amount no less than the difference between the value of Parcel 2 at the time of conveyance and the value of the consideration given by Oxford Springs for Parcel 2;

    v.   awarding setoff of such damages against any valid and enforceable claim that Gary Property Management holds against the Receivership Estate;

    vi.   awarding any and all attorney's fees, costs, and interest allowed by contract or law; and

    vii. awarding any and all other relief as may be just and equitable.

Date: June 2, 2022

Respectfully submitted,


/s/ Lilli Evans Bass
Lilli Evans Bass, Miss. Bar No. 102896
BROWN BASS & JETER, PLLC
1755 Lelia Drive, Suite 400
Jackson, Mississippi 39216
Tel: 601-487-8448
Fax: 601-510-9934
bass@bbjlawyers.com


*Counsel for the Receiver*

/s/ Brent B. Barriere
Brent B. Barriere, *Primary Counsel*
Kaja S. Elmer
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Tel: 504-586-5252
bbarriere@fishmanhaygood.com
kelmer@fishmanhaygood.com

Kristen D. Amond
MILLS & AMOND LLP
650 Poydras Street, Suite 1525
New Orleans, Louisiana 70130
Tel: 504-383-0332
kamond@millsamond.com

*Counsel for the Receiver*
*Admission pro hac vice pending*