# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**ALYSSON MILLS,** *in her capacity as Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*,

          *Plaintiff*,

v.

**GARY PROPERTY MANAGEMENT, LLC**,

          *Defendant*.

CAUSE NO. 3:22-CV-296-CWR-BWR

## ORDER

Before the Court is the Plaintiff's motion for partial summary judgment. Docket No. 26. The matter is fully briefed and ready for adjudication. On review, the motion will be granted.

**I.  Factual and Procedural History**

Plaintiff Alysson Mills is a Court-appointed Receiver. She is tasked with investigating the assets of Arthur Lamar Adams, a federal prisoner convicted of perpetrating a Ponzi scheme; selling Adams' ill-gotten assets; and returning the proceeds to Adams' victims. Mills' appointment arose out of a lawsuit the U.S. Securities & Exchange Commission filed in this judicial district in 2018.

Through her investigation, Mills learned that Adams had used Ponzi scheme "profits" to purchase a significant stake in Oxford Springs, LLC. The entity owned more than 2,000

acres of land in Lafayette County, Mississippi. It had planned to develop an equestrian-themed resort and golf course there.

Mills also learned that in September 2016, Oxford Springs had paid $1 million to Defendant Gary Property Management, LLC, in exchange for a 100-acre parcel of land. But cash wasn't the only material term of the sale. Oxford Springs also agreed to spend millions more dollars on future infrastructure and landscaping improvements. The improvements, which were inserted into the Deed as restrictions, would benefit both Oxford Springs and Gary Property Management, which continued to own adjacent land.

After the purchase, Oxford Springs hired professionals to make conceptual drawings of the required improvements. But nothing came to fruition; nothing was ever built. Instead, Adams' Ponzi scheme collapsed in April 2018, the Securities & Exchange Commission entered the picture to try and protect his victims, and through the legal proceedings that followed, Mills was hired to clean up the havoc Adams caused.

As relevant here, after her appointment, Mills negotiated with Adams' business partners and secured exclusive ownership of Oxford Springs. She then marketed and sold thousands of acres of its land to the highest bidder(s) without difficulty.

This dispute concerns Oxford Springs' final asset: the 100-acre parcel it bought from Gary Property Management in 2016.

By 2021, Mills had concluded that this last parcel would not sell with the Deed restrictions Oxford Springs had agreed to. She found a buyer willing to pay $540,000 for the land *without* the restrictions. Mills then sought this Court's permission to sell the parcel to that buyer free and clear of any duty to make the required improvements.

The Court held an evidentiary hearing on her request. It took testimony from three independent appraisers, *see* 28 U.S.C. § 2001(b), and heard Gary Property Management's objection to the sale. The Court ultimately approved the sale with one condition. Mills could sell the parcel to the highest bidder for $540,000, free and clear of the most burdensome obligations,[1] but additional proceedings would be necessary to determine if Gary Property Management retained a valid and enforceable lien or other encumbrance on the parcel. The Order concluded with this instruction:

> The Receiver is directed to file appropriate pleadings to initiate proceedings to determine (1) whether Gary Property Management, LLC has a valid and enforceable claim of any type against the Receivership Estate; (2) if Gary Property Management, LLC has such a claim, the amount of such claim; and (3) whether all or any part of such a claim is secured by the proceeds of the Receiver's sale of Parcel 2.

Docket No. 26-1 at 8.

Mills subsequently commenced this suit. In Counts I and II, she sought a declaratory judgment that Gary Property Management has no claim against the Receivership Estate or, in the alternative, that any claim it has is unsecured and does not reach the $540,000 in proceeds. In Counts III and IV, Mills asserted fraudulent transfer and unjust enrichment claims. Discovery commenced and closed.

Mills now seeks summary judgment on Counts I and II. She argues that the Deed restrictions "should no longer be enforced due to the radical changes in circumstances regarding the property" or, alternatively, that she is entitled to summary judgment "because

---

[1] The buyer did not object to some of the restrictions contained in Paragraph 8 of the Deed. As a result, portions of that Paragraph remain in force. *See* Docket No. 26-1 at 7-8.

3

GPM can neither substantiate nor quantify any claim against the Receivership Estate." Docket No. 27 at 4.[2]

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

On review, the Court concludes that this motion must be resolved on the basis of a lack of evidence. We begin, and end, with the money.

---

[2] In a separate motion, Gary Property Management seeks summary judgment on Counts III and IV. It contends that Mills lacks evidence to prove fraudulent transfer or unjust enrichment. This Order does not address Gary Property Management's motion.

4

In 2016, when Gary Property Management sold this parcel of land, Oxford Springs' lender hired an appraiser to determine the fair market value of the acreage. The appraiser determined that it was worth $860,000. Docket No. 28-7. So when the sale was finalized, Gary Property Management pocketed $140,000 more than its land was estimated to be worth.

There's another way to look at value: the price per acre. Oxford Springs bought most of its Lafayette County land—about 2,300 of its 2,400 total acres—for $2,264 per acre. But Oxford Springs paid Gary Property Management $10,000 per acre. Even crediting Gary Property Management's assertion that its parcel was highly desirable, the math reveals it to be more than four times as valuable as adjacent land.

The 2021 proceedings before this Court suggest yet another measure of value. When she wanted to sell this last piece of land, Mills had to hire three disinterested appraisers to estimate its fair market value. Their average estimate was about $560,000. Mills, in fact, found a buyer willing to purchase the land for $540,000. If these numbers are to be believed—and the evidence indicates that they were fair and reasonable sums—then Gary Property Management sold these 100 acres for $440,000 to $460,000 more than they were worth.

The Court recites these different means of calculation not to insinuate anything untoward or illicit. Rather, the Court lays them out because money puts a fine point on the true nature of this lawsuit; it gets us beyond the Receiver's arguments about fairness to Adams' victims and past Gary Property Management's heartstrings-tugging tale of how reluctant it was to sell land that had been in the family for 50 years. We presume good faith of all these parties and consider the evidence neutrally.

At heart, Gary Property Management objected to the sale because it wants the benefit of the bargain it made with Oxford Springs: the $1 million *and* the value of the various

5

improvements Oxford Springs promised to make to the parcel. Gary Property Management wants the value that the fencing, landscaping, boulevard, utility easement, and boulevard access rights might create for its adjacent land.

The Receiver's expert concluded that the construction alone would cost more than $6.5 million. Gary Property Management hasn't proffered its own expert to challenge that sum, so the Court takes that construction cost as undisputed.

The problem is this: at the end of the day, Gary Property Management hasn't presented any evidence of the lost value *to itself* of those improvements. Did it sustain any damages as a result of losing the benefit of the bargain? We simply do not know.

Gary Property Management says it wants to use the Receiver's expert to prove damages. But the Receiver's expert addressed a different question. It determined that anyone who bought the land would have to pay a construction company at least $6.5 million to satisfy the restrictions in the Deed. Docket No. 26-10. That is not, however, an estimate of how much Gary Property Management would have benefitted from compliance with the Deed restrictions.

We know this intuitively. If your next-door neighbor spends $250,000 to improve his property, your property doesn't magically get $250,000 of improvements too. You benefit only indirectly: if the construction increases the value of your neighbor's property, your own property value *might* go up.[3] And after understanding that, the question in this suit was straightforward: by how much would Gary Property Management's adjacent land have increased in value had Oxford Springs improved the 100-acre parcel? On this record, though,

---

[3] In other words, your benefit from your neighbor's property improvements is indirect *and speculative*.

6

we cannot answer this question. Gary Property Management has not designated an expert or put forward any evidence to calculate its losses, if it suffered any in the first place.

According to this Court's prior Order, the express purpose of this suit was to determine, among other things, whether "if Gary Property Management, LLC has such a claim, the amount of such claim." Docket No. 26-1 at 8. And when the time came to show its cards, Gary Property Management did not put forth any evidence estimating the amount of its claim. "Conclusory allegations" and "unsubstantiated assertions" are not enough to avoid summary judgment. *Wallace*, 80 F.3d at 1047.

## IV. Conclusion

For these reasons, the Plaintiff's motion is granted.

**SO ORDERED**, this the 3rd day of August, 2023.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE