# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ALYSSON MILLS,** *in her capacity as Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*,

*Plaintiff*,

v.

**GARY PROPERTY MANAGEMENT, LLC**,

*Defendant*.

Cause No. 3:22-CV-296-CWR-BWR

## ORDER

Before the Court is the Defendant's motion for summary judgment on Counts III and IV of the Complaint. Docket No. 28. On review, the motion will be granted in part and denied in part.

**I.  Factual and Procedural History**

Plaintiff Alysson Mills is a Court-appointed Receiver. She is tasked with investigating the assets of Arthur Lamar Adams, a federal prisoner who perpetrated the largest Ponzi scheme in Mississippi history through an entity he owned called Madison Timber Properties, LLC. Mills has a duty to recover and sell Adams' and Madison Timber's ill-gotten assets, then return the proceeds to his victims. Mills' appointment arose out of a lawsuit the U.S. Securities & Exchange Commission filed in this judicial district in 2018.

Through her investigation, Mills learned that Adams had used Ponzi scheme money to co-found and fund Oxford Springs, LLC. Adams was, in fact, the managing member of

Oxford Springs. Docket No. 28-5 at 10. Oxford Springs then purchased, with the aid of a bank loan, more than 2,000 acres of land in Lafayette County, Mississippi. It planned to develop an equestrian-themed resort and golf course there.

Mills also learned that in September 2016, Oxford Springs paid $1 million to Defendant Gary Property Management, LLC, in exchange for a 100-acre parcel of land in Lafayette County. But cash wasn't the only material term of the sale. To seal the deal, Oxford Springs also agreed to spend millions more dollars on future infrastructure and landscaping improvements. The improvements were inserted into the Deed as restrictions. If realized, they would benefit both Oxford Springs and Gary Property Management, which continued to own adjacent land.

After the purchase, Oxford Springs hired professionals to make conceptual drawings of the required improvements. But the Ponzi scheme collapsed in April 2018, and nothing was ever constructed on the land. Instead, the Securities & Exchange Commission entered the picture to try and protect his victims, and through the legal proceedings that followed, Mills was hired to clean up the havoc Adams caused.

As relevant here, Mills negotiated with Adams' business partners and Oxford Springs' lender to secure exclusive ownership of Oxford Springs. She marketed and sold thousands of acres of its land to the highest bidder(s) and returned the proceeds to Adams' victims. Mills also dissolved Oxford Springs, taking its assets into the Receivership Estate.

This dispute concerns Oxford Springs' final asset: the 100-acre parcel it bought from Gary Property Management in 2016.

By 2021, Mills had concluded that this last parcel would not sell with the Deed restrictions. (Her expert, in fact, estimates that the improvements would cost more than $6.5

million to fulfill.) She found a buyer willing to pay $540,000 for the land *without* the most burdensome restrictions. Mills then sought this Court's permission to sell the parcel to that buyer free and clear of any duty to make the required improvements.

On April 12, 2021, the Court held an evidentiary hearing on her request. It took testimony from three independent appraisers, *see* 28 U.S.C. § 2001(b), and heard Gary Property Management's objection to the proposed sale. The Court ultimately approved the sale with one condition. Mills could sell the parcel to the highest bidder for $540,000, free and clear of the most burdensome obligations,[1] but additional proceedings would be necessary to determine whether Gary Property Management retained a lien or other encumbrance on the parcel. The Order concluded with this instruction:

> The Receiver is directed to . . . initiate proceedings to determine (1) whether Gary Property Management, LLC has a valid and enforceable claim of any type against the Receivership Estate; (2) if Gary Property Management, LLC has such a claim, the amount of such claim; and (3) whether all or any part of such a claim is secured by the proceeds of the Receiver's sale of Parcel 2.

Docket No. 26-1 at 8.

This suit followed in 2022. In Counts I and II, Mills sought a declaratory judgment that Gary Property Management has no claim against the Receivership Estate or, in the alternative, that any claim it has is unsecured and does not reach the $540,000 in proceeds. In Counts III and IV, Mills asserted fraudulent transfer and unjust enrichment claims. Discovery commenced and closed. Cross-motions for partial summary judgment followed.

---

[1] The buyer did not object to some of the restrictions contained in Paragraph 8 of the Deed. As a result, portions of that Paragraph remain in force. *See* Docket No. 26-1 at 7-8.

In August 2023, this Court granted the Receiver's motion. Gary Property Management had failed to put forward evidence of its damages, if any it had suffered. Docket No. 39. It was not entitled to a speculative share of the sale proceeds.

Now before the Court is Gary Property Management's motion seeking summary judgment on Counts III and IV. It argues that Mills cannot pursue or prove her fraudulent transfer or unjust enrichment claims.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.    Discussion

Each claim will be addressed in turn.

### A. Count III – Fraudulent Transfer

Gary Property Management says "there is no proof that Oxford Springs intended to defraud any creditor by virtue of its purchase of the GPM property." Docket No. 29 at 9. It then argues that "the claim is barred by the applicable statute of limitations because the 'obligation was incurred' on September 27, 2016, well before this action was filed on June 2, 2022." *Id.* at 10. In a footnote, and without citing any authority, Gary Property Management adds that this claim "goes beyond [Mills'] receivership powers because it does so as Oxford Springs (since dissolved) and under circumstances where the value of Adams['] contributions to a bona fide business venture have been recouped several times over." *Id.* at 8 n.3.

After considering these arguments against the evidentiary record and the applicable law, the Court agrees in part and disagrees in part. While the legal issues fall in Mills' favor, the fact-intensive issues must await adjudication at trial.

It is well-established that a federal equity receiver may use state uniform fraudulent transfer laws to "recover assets that the operator of a Ponzi scheme caused to be fraudulently transferred to a third party without fair consideration." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013). Put differently, "the corporations in receivership, through the receiver, may recover assets or funds that the principal fraudulently diverted to third parties without receiving reasonably equivalent value." *Janvey v. Brown*, 767 F.3d 430, 437 (5th Cir. 2014) (quotation marks and citation omitted) [hereinafter *Brown*].

In this case, Mills "stand[s] in the shoes" of Adams and Madison Timber. *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) (citations omitted). Under Fifth Circuit precedent, therefore, she is permitted to recover money that Adams or Madison

5

Timber fraudulently sent elsewhere without receiving "reasonably equivalent value." *Brown*, 767 F.3d at 437.

Mills' claim in this case is specifically based upon Mississippi's Uniform Fraudulent Transfer Act. The Act begins with the following:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

Miss. Code Ann. § 15-3-107(1). The Act then lists more than a dozen factors that can be considered probative of "actual intent." *Id.* § 15-3-107(2)(a)-(n). Factor (m), for example, says fraud may exist "if the debtor" did not receive "reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time . . . ." *Id.* § 15-3-107(2)(m). If the plaintiff proves factors (l), (m), or (n), "then there will be a strong presumption of fraud which can be rebutted only by clear and convincing evidence." *Id.* § 15-3-107(3).

The evidence shows that Adams sent more than $1 million to Oxford Springs. Gary Property Management concedes as much. Docket No. 29 at 8. That money was diverted from Adams' Madison Timber scheme; no one argues that Adams was independently wealthy or that these assets were sourced in any other way. The evidence then shows that Adams personally and directly used Oxford Springs to buy the 100-acre parcel from Gary Property Management. Docket Nos. 28-3 and 28-4. That too is undisputed.

The next question, then, is whether these acts constitute fraud. Mills has ample evidence to send that factual question to a jury. She has gathered evidence indicating that Oxford Springs was insolvent either before or as a result of the transaction, given its hefty loan balances and her expert's calculation that carrying out the Deed obligations would have

6

cost Oxford Springs at least $6.5 million. Docket No. 30 at 8. She has also compiled evidence indicating that Oxford Springs failed to receive reasonably equivalent value. As detailed in the Court's previous Order, appraisals indicate that Gary Property Management obtained between $140,000 and $460,000 in cash over and above the parcel's fair market value. Docket No. 39 at 5. On a price per acre basis, in fact, Oxford Springs paid Gary Property Management "more than four times" as much as it had for its other 2,300 acres. *Id.*

Gary Property Management presses that Mills' claim cannot proceed because she eventually sold all ~2,400 acres for more money than Adams originally diverted to Oxford Springs. Docket No. 35 at 1 and 4. The focus of the Act, though, is on the propriety of the "transfer made or obligation incurred," not the eventual recovery of a receiver. Miss. Code Ann. § 15-3-107(1). Gary Property Management's objection is, therefore, irrelevant.

Gary Property Management then returns to its argument that Mills' claim was filed too late. This contention has merit under Mississippi law, which expressly "extinguishe[s]" fraudulent transfer claims if they are not brought within a certain period of time. *Id.* § 15-3-115. Most relevant here, apparently, is the sub-section of the Act that lets plaintiffs pursue § 15-3-107(1) claims "within three (3) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered." *Id.* § 15-3-115(a).

The parties have not yet identified with precision, and in fact continue to dispute, when "the transfer or obligation was or could reasonably have been discovered." *Id.* Mills' prior settlements, the evidentiary hearing, and the dissolution of Oxford Springs complicate the situation. Accordingly, Gary Property Management is entitled to present evidence

7

supporting this affirmative defense at trial. A status conference will be scheduled before the end of the year to set that trial.

For these reasons, the motion for summary judgment is denied as to the fraudulent transfer claim.

### B.     Count IV – Unjust Enrichment

Next, Gary Property Management argues that Mills' unjust enrichment claim fails because the transaction in question was reduced to a written contract. It is correct.

"Unjust enrichment applies to situations where there is *no legal contract* and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 371 (Miss. 2013) (quotation marks and citation omitted).

Given this law, Gary Property Management is entitled to summary judgment on this claim.[2]

## IV.    Conclusion

For these reasons, the Defendant's motion is granted in part and denied in part.

**SO ORDERED**, this the 13th day of November, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[2] In the alternative, Mills argues that she should be allowed to present her fraudulent transfer and unjust enrichment claims defensively—as a shield rather than a sword. This Order has not taken up this argument because the Court previously ruled that Gary Property Management had not presented competent evidence that it was entitled to anything from the sale proceeds. *See* Docket No. 39. In other words, there is no need for a "shield" at this trial because the Receivership Estate is not at risk of losing anything.
  Years down the line, however, in the event the Fifth Circuit identifies error in the previous Order and resuscitates Gary Property Management's claim to a share of the sale proceeds, it may be necessary to consider Mills' argument for the defensive use of her fraudulent transfer and unjust enrichment claims.